UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Paul G. Angott,

       Plaintiff,

vs.

First Sense Medical, LLC,
a Delaware corporation,

       Defendant.

Case No.
Hon.

_____

PITT, MCGEHEE, PALMER & RIVERS, P.C.
Michael L. Pitt  (P24429)
Beth M. Rivers  (P33614)
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
mpitt@pittlawpc.com
brivers@pittlawpc.com

_____

**Complaint or Money Damages and Declaratory Judgment**
**Jury Demand**

**Introduction**

Plaintiff, Paul Angott ("Angott") complains of First Sense Medical, LLC ("Company" or "FSM") for breach of a severance agreement arising out of his termination from FSM, a company he founded to commercialize a patented lifesaving breast cancer detection device he invented using telethermography

technology. Angott also seeks an order declaring that the severance agreement is not a plan or program governed by Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.,* ("ERISA").

## Parties, Jurisdiction and Venue

1. Angott is a resident of Oakland County and a citizen of the state of Michigan.

2. The Company is incorporated in Delaware and has its principal place of business in Arizona.

3. Venue in this judicial district is appropriate because a substantial portion of the events in controversy occurred in this judicial district. 28 U.S.C. § 1391.

4. Because this matter consists of a dispute between citizens of different states, this Court has original diversity jurisdiction over Angott's claims. Pursuant to 28 U.S.C. § 1332 (c)(1), the Company is a citizen of Delaware and Arizona.

5. The amount in controversy exceeds $75,000.

6. This court has personal jurisdiction over FSM.

## Statement of Facts

7. In June of 2008, Angott created Angott Medical Products, LLC. This business was operated from his home in Oakland County and was created for

the purpose of developing a breast cancer detection device using telethermography technology.

8. In March, 2011, after securing a first round of financial investments, Angott moved his operation from his home to an office and laboratory located in Pontiac, Michigan. The name of the business was changed to First Sense Medical, LLC.

9. From 2011 through May of 2015, Angott brought in more investors who in exchange for equity supplied the funds necessary to capitalize and operate the Company.

10. On May 29, 2015, Angott was employed by FSM as its President earning $150,000 per year and on that date Angott and the Company entered into the severance agreement ("Agreement") that is the subject matter of this dispute. The Agreement is attached as Exhibit 1.

11. Because Angott was giving up considerable equity in FSM and the resultant loss of control, the Agreement was extremely important to him as protection against loss of employment and a financial return for his invention.

12. On January 9, 2017, FSM received pre-marketing approval from the FDA based on the FDA's conclusion that the Sentinel BreastScan II System was substantially equivalent in safety and effectiveness to predicate devices and therefore was approved for marketing without further FDA approval.

13. In February, 2017, FSM hired John Rush ("Rush") as its Chief Executive Officer to move forward with the commercialization of Angott's invention.

14. On May 5, 2017, Rush sent an email to all FSM investors stating that "Paul Angott, Founder will be moving to a full time consulting role effective June 1."

15. On May 18, 2017, Rush conducted a telephone conference with investors in FSM and other interested parties wherein he announced that the Company was moving its headquarters to Arizona to develop the device prototype necessary for production and commercialization. Angott's status as a full time consultant beginning June 1st was not altered during that phone call.

16. Between May 18th and May 24th, the Company and Angott were negotiating the terms of the Consulting Agreement that would govern the next two years of their relationship.

17. On May 24, 2017, Angott was terminated by FSM without cause.

18. FSM falsely claimed that Angott's termination was "For Cause" as that term is used in the Agreement.

19. FSM falsely claimed that Angott threatened employees and thereby creating a hostile work environment for FSM employees.

20. At the time of his termination, Angott was informed that he

allegedly threatened FSM employees in April, 2017.

21. Angott did not engage in the conduct alleged as the basis for his termination and the Company's assertion of the false reasons for his separation was a pretext for the Company's desire to avoid its contractual obligations under the Agreement and to force Angott into a Consulting Agreement which was unfair and oppressive.

## COUNT I
## BREACH OF AGREEMENT TO PAY SEVERANCE

22. Angott incorporates the above statement of facts as if stated in full herein.

23. Section 3 of the Agreement provides that Angott would be eligible to receive from FSM a severance amount paid out in accordance with the Agreement if his termination was "Not for Cause". The agreed upon severance amount, Angott's prorated bonus and continuation of health insurance for Angott and his family for 18 months is valued at least at $334,110.

24. Section 4 of the Agreement also provides that Angott will receive from FSM a lesser amount in severance if terminated for "For Cause" provided the reason for the termination falls under Section 2(d)(vi) (failure to perform duties) of the Agreement. This lesser amount of severance, Angott's prorated bonus and continuation of health insurance for Angott and his family for 18

months is valued at least at $167,055.

25.     Angott did not at any time engage in any conduct which would amount to "For Cause" as that term is defined in the Agreement.

26.     Alternatively, Angott did not engage in any conduct which would deprive him of the "For Cause" Severance payments provided for under Section 4 of the Agreement.

27.     FSM breached its Agreement with Angott when it terminated his employment without cause and failed to pay him the $334,110 it had agreed to or alternatively failed to pay him the $167,055 for a "For Cause" termination.

28.     Angott has made a demand for payment and FSM has refused to comply with this demand for payment.

29.     FSM asserted false reasons for Angott's separation in order to avoid its obligations under the Agreement and to force Angott to accept an unfair and oppressive Consulting Agreement.

30.     Accordingly, Angott demands judgment against FSM for the $334,110 due under Section 3 of the Agreement or, alternatively, the $167,055 due under Section 4 of the Agreement plus interest, reimbursement of costs of litigation and attorney fees.

## COUNT II
## REQUEST FOR DECLARATORY JUDGMENT

31.   Angott incorporates the above statement of facts as if stated in full herein.

32.   Angott seeks a Declaratory Judgment pursuant to 28 U.S.C § 2201 for the purpose of providing early "settlement of the dispute between the parties and to remove uncertainty and controversy from the parties' legal relations." *Moore's Federal Rules Pamphlet,* 2017 § 2201.5 p. 924

33.   Sections 14 and 20 of the Agreement suggests that it is to be construed as a severance plan or program governed by the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.,*("ERISA")

34.   The Agreement, however, does not meet the legal requirements of a severance plan governed by ERISA.

35.   Angott seeks a declaration from the court that the Agreement is not governed by ERISA because:

    a.   The Agreement pertains to one individual (Angott) and is not part of plan or program;

    b.   There is no administrative scheme established in the Agreement that meets the requirements of ERISA;

    c.   The Agreement does not meet ERISA conflict of interest standards

    because the fiduciary is the Company which has a vested interest in denying the claim;

 d. The Company did not comply with ERISA reporting requirements; and

 e. Other reasons as discovery in the case may reveal.

Accordingly, Angott requests an order declaring that the Agreement is not an ERISA plan or program.

         PITT, McGEHEE, PALMER, & RIVERS, PC

         By: */s/ Michael L. Pitt P24429*
           Michael L. Pitt (P24429)
           Beth M. Rivers (P33614)
           Attorneys for Plaintiff
           117 West Fourth Street, Suite 200
           Royal Oak, Michigan 48067
           (248) 398-9800

Dated: October 24, 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Paul G. Angott,

       Plaintiff,                        Case No.
                                        Hon.

vs.

First Sense Medical, LLC,
a Delaware corporation,

       Defendant.
_____

PITT, MCGEHEE, PALMER & RIVERS, P.C.
Michael L. Pitt  (P24429)
Beth M. Rivers  (P33614)
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
mpitt@pittlawpc.com
brivers@pittlawpc.com

_____

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues to the within cause of action

                            PITT, McGEHEE, PALMER, & RIVERS, PC

                            By:    */s/ Michael L. Pitt P24429*
                                    Michael L. Pitt (P24429)
                                    Beth M. Rivers (P33614)
                                    Attorneys for Plaintiff
                                    117 West Fourth Street, Suite 200
                                    Royal Oak, Michigan 48067
                                    (248) 398-9800

Dated: October 24, 2017